# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| RABIJA ALIC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:15-cv-1301-JAR |
| ) | |
| CAROLYN COLVIN, ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*.

### I. Background

Plaintiff Rabija Alic ("Alic") filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., in 2010. (Tr. 42-43) The Social Security Administration denied Alic's claim. (Tr. 44-50) Alic filed a timely request for a hearing before an administrative law judge ("ALJ"), and following a hearing, the ALJ issued a written decision on January 11, 2012 upholding the denial of benefits. (Tr. 6-21) That opinion was appealed to this Court, and by Order of Remand issued August 8, 2014, the ALJ's decision was reversed. (Tr. 870-904; 4:13-cv-638-TCM). United States Magistrate Judge Mummert found that the ALJ failed to accept or reject a specific finding by one of Alic's physicians, and failed to identify specific Dictionary of Occupational Title ("DOT") codes for the jobs identified

as Alic's past relevant work. Judge Mummert also found that the ALJ did not address whether Alic can perform her past relevant work at the necessary language level in light of her Bosnian eighth grade education and inability to read English. (Tr. 902-03)

Following a second hearing, the ALJ issued a new unfavorable decision on April 27, 2015. (Tr. 819-38) The ALJ decision became final on June 27, 2015 and is now before this Court for judicial review.

## II. Decision of the ALJ

The ALJ determined that Alic had not engaged in substantial gainful activity since March 27, 2010, which is the alleged onset date of disability. (Tr. 824) The ALJ found that Alic had the following severe impairments: lumbar degenerative disc disease and coronary disease but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 824-25) After considering the entire record, the ALJ determined that Alic has the residual functional capacity ("RFC") to perform the full range of light work, as defined in 20 C.F.R. § 404.1567(b). (Tr. 826)

The ALJ found that Alic is able to perform her past relevant work as a packer, housekeeper, and sewing machine operator.[1] (Tr. 831) Thus, the ALJ found Alic not disabled within the meaning of the Social Security Act. (Tr. 833) The ALJ also made an alternative finding that Alic would be able to work as a mail clerk, electrical assembler, or office helper. (Tr. 832)

## III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

---

[1] Alic worked as a packer from January 2008 to July 2009. (Tr. 142) She worked as a housekeeper from May 2003 to March 2010. *Id.* She worked as a sewing machine operator from January 2003 to May 2003. *Id.*

2

### A. Hearing Testimony

The ALJ held a hearing in this matter on February 4, 2015. Alic testified and was represented by counsel. (Tr. 841-49) She testified with the aid of an interpreter. (Tr. 841) A vocational expert did not testify at the hearing, but rather submitted vocational interrogatories to the ALJ. (Tr. 986-88)

#### 1. Alic's Testimony

Alic was 54 years old at the time of the hearing. (Tr. 841) She was born in Srebrenica, Bosnia, and came to the United States in 2001. (Tr. 842) At the time of the hearing, Alic was living with her son and daughter-in-law. *Id.* She has undergone eight years of schooling in Bosnia. *Id.* She is unable to read or write English. (Tr. 843) She does not have a driver's license. *Id.*

Alic testified that she is able to lift a gallon of milk with her right hand but not her left hand because she has a pacemaker. (Tr. 844) She is able to stand for "maybe 15 minutes" before she has to sit down. *Id.* She can sit "around 10 minutes" before she has to get up and change positions. *Id.* She is able to walk for "maybe 15 minutes" before she has to take a break. *Id.*

Alic stated that she has difficulty taking a shower and getting dressed because of her left arm. (Tr. 845) Her daughter-in-law has to be there when Alic takes a shower, and Alic is not allowed to close the door to the bathroom. *Id.* She does not do any cooking around the house, and she tries to clean the house but is unable to finish, so she must call her daughter-in-law to finish it. *Id.*

Next, Alic testified about her back problems. Alic testified that her spine is damaged, and that she was told of a problem with a bone in her back. (Tr. 846) She experiences pain

going from her right hip down her leg, and the pain has also started in her left leg. *Id.* However, she states the pain is worse on her right side. *Id.*

Alic also stated that she has received treatment for depression. (Tr. 846) She witnessed the Bosnian War and recounted her experiences during the war, including food and water shortages. *Id.* Alic said that she once saw, after leaving home to fetch water with another woman, three bodies that had been decapitated. (Tr. 846-67) Alic stated that she continues to have thoughts about her experiences during the war and now has trouble sleeping because of them. (Tr. 847) She also takes sleeping pills and will have nightmares about the war. *Id.*

Alic also suffers from heart problems. She has a pacemaker and high blood pressure. (Tr. 848) She tires easily. (Tr. 849)

2. **Vocational Interrogatory of Vocational Expert**

Vocational expert Jenifer Teixeira was given a list of questions by the ALJ in an interrogatory on February 11, 2015, to which Ms. Teixeira responded on February 18, 2015. (979-88)

For the hypothetical, the ALJ asked Ms. Teixeira to assume an individual of Alic's age, education, work experience, and ability to communicate in English as defined in 20 C.F.R. § 404.1564 and 20 C.F.R. § 416.964, who has the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b). *Id.* The ALJ then asked Ms. Teixeira whether this individual could perform any of Alic's past jobs as actually performed or as normally performed in the national economy. *Id.* Ms. Teixeira opined that the hypothetical individual would be able to perform past work as a housekeeper, packer, and sewing machine operator. (Tr. 987) Ms. Teixeira further opined that the individual would not be able to perform as a home health aide because that position is at the medium exertion level. *Id.*

4

Next, the ALJ asked whether the individual could perform any unskilled occupations with jobs that exist in the national economy. (Tr. 981) Ms. Teixeira opined that the individual could work as a mail clerk, DOT number 209.687-026, specific vocational preparation ("SVP") of 2, light work; 2,850 such jobs are estimated to exist in Missouri and 119,960 nationally. (Tr. 987) Second, such a person could work as an electrical assembler, DOT number 729.687-010, SVP of 2, light work; 2,740 such jobs are estimated to exist in Missouri and 180,440 nationally. *Id.* Third, such a person could work as an office helper, DOT number 239.567-010, SVP of 2, light work; 1,670 such jobs are estimated to exist in Missouri and 85,620 nationally. *Id.*

Next, the ALJ asked Ms. Teixeira to assume the same individual as discussed above, except the individual has the RFC to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). (Tr. 982) The ALJ asked whether this new hypothetical individual could perform any of Alic's past jobs as actually performed or as normally performed in the national economy. *Id.* Ms. Teixeira opined that Alic would be able to return to her work as a packer, but her work as a housekeeper, home health aide, and sewing machine operator exceed the exertion limit of sedentary work. (Tr. 988)

The ALJ then asked whether this new individual could perform any unskilled occupations with jobs that exist in the national economy. (Tr. 983) Ms. Teixeira opined that this individual could work as a document preparer, DOT number 249.587-018, SVP of 2, sedentary work; 4,802 such jobs are estimated to exist in Missouri and 798,590 nationally. (Tr. 988) Second, such a person could work as a stuffer, DOT number 731.685-014, SVP of 2, sedentary work; 1,540 such jobs are estimated to exist in Missouri and 342,280 nationally. *Id.* Third, such a person could work as a stem mounter, DOT number 725.684-018, SVP of 2, sedentary work; 2,740 such jobs are estimated to exist in Missouri and 180,440 nationally. *Id.*

B.   **Medical Records**

The ALJ summarized Alic's medical records at Tr. 826-31. Relevant medical records are discussed as part of the analysis.

IV.  **Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Brantley v. Colvin*, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation

process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id*.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *Id*.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. *Brantley*, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the

claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id*. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
> (2) The education, background, work history, and age of the claimant;
> (3) The medical evidence given by the claimant's treating physicians;
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
> (5) The corroboration by third parties of the claimant's physical impairment;
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

**V.  Discussion**

Alic raises several issues in her appeal of the Commissioner's decision. First, Alic alleges that the ALJ failed to follow the law of the case because he failed to treat her inability to communicate in English as a vocational issue. (Doc. No. 12, at 9)  Second, she alleges that the ALJ incorrectly analyzed Alic's ability to communicate in English, and incorrectly questioned the vocational expert. *Id.* at 10.  Third, Alic alleges that the ALJ failed to articulate a sufficient rationale for giving little weight to the opinion of Sandra Tate, M.D., an independent medical examiner, that Alic's stooping capacity was limited. *Id.* at 12.  Fourth, Alic argues in her reply that the Commissioner's brief presents post-hoc rationale and proposes new findings in violation of the *Chenery* doctrine. (Doc. No. 18, at 1)

**RFC Finding**

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations.  *Moore*, 572 F.3d at 523.  The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence.  *See Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (RFC must be determined based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations, and supported by some medical evidence).  "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.  However, there is no requirement that an RFC finding be supported by specific medical evidence."  *Hensley v. Colvin*, No. 15-2829, 2016 WL 3878219, at *3 (8th Cir. July 18, 2016) (internal quotations and citations omitted).

Alic contends that the physical limitation giving rise to her disability is her back pain. The Court finds that substantial evidence in the record supports the ALJ's finding that Alic's lumbar degenerative disc disease is not a disabling impairment.

Alic's treatment records and objective medical evidence were "grossly inconsistent" with her allegations of disabling degenerative disc disease. (Tr. 827) The ALJ pointed to records showing that Alic's spine had only mild degenerative changes. (Tr. 544, 826-27) X-rays of Alic's spine on March 27, 2010, the alleged onset date of disability, showed it in good alignment without spondylolysis or spondylolisthesis, and with well maintained vertebral body heights and disc spaces. (Tr. 500) Dr. Tate's CT scans ordered on July 7, 2011 found mild or minimal disc bulging at L1-L2, L2-L3, L4-L5, and no disc herniation at L5-S1. (Tr. 544) Moreover, the ALJ noted that Alic had received MRI, CT scans, and x-rays that showed degenerative changes in her spine and mild stenosis at L4-5 but well-maintained vertebral body heights, disc spaces, and good alignment without evidence of spondylolysis or spondylolisthesis. (Tr. 500, 826-27) In addition, the evidence created from April 2012 to August 2014 (after Dr. Tate had rendered her opinion) shows that Alic sought treatment for her back infrequently (approximately four to five times over more than two years), which is inconsistent with her allegations of disabling back pain. (Tr. 1082-1140)

The ALJ also noted that Alic appeared to work for many years with her condition. *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (claimant continuing to work with impairments demonstrated that impairments were not disabling). In the imaging performed on Alic's spine, the medical providers characterized Alic's spine conditions as a result of degenerative changes. (Tr. 500, 525) Dr. Tate opined that the prevailing cause of Alic's back pain is not her injury on March 27, 2010, but rather pre-existing degenerative disc and joint changes. (Tr. 525) Dr. Tate

further opined that this injury "may have caused a temporary precipitation of symptoms" and that "[Alic] would have a 0 percent permanent partial disability of the lumbar spine." *Id.* Records from another non-treating source, Dr. Volarich (who is discussed in greater detail below) also support the idea that Alic was able to work with her condition. In a February 2011 report, Dr. Volarich stated that Alic injured her back on or about December 21, 2008 and reinjured her back on two subsequent occasions. (Tr. 510) Alic's work history report lists the end date of her employment at the Hilton Frontenac as March 2010. (Tr. 118). After review of the record, Alic's claim of the disabling nature of her degenerative disc disease therefore conflicts with her subjective complaints, as she was able to continue working with the impairment. Consequently, the ALJ properly found that Alic could not claim her impairment as disabling if she was able to work with her impairment over a period of years without any worsening of her condition.

In addition, Alic was found to tolerate treatment well and had a good prognosis, but that she showed poor compliance with her home exercise program and demonstrated poor effort in her physical therapy sessions. (Tr. 827) Alic was prescribed physical therapy three times a week for two weeks. (Tr. 191) However, the record only contains evidence of three total visits. (Tr. 184-203, 507-08) The physical therapist's notes pertaining to Alic's third visit demonstrates that she was instructed to perform a home exercise program a minimum of two times per day, with which Alic did not comply. (Tr. 186, 201) Moreover, Alic demonstrated "poor compliance and effort" during her physical therapy. (Tr. 186) The physical therapist attributed Alic's severely diminished range of motion in all directions to her refusal to attempt the therapy, and the physical therapist concluded that Alic's "subjective complaints are inconsistent with objective findings." (Tr. 186) A failure to follow the prescribed treatment without good reasons is grounds for denying an application for benefits. *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.

2004); *see also* 20 C.F.R. § 416.930.  Here, the ALJ properly considered Alic's non-compliance with her prescribed treatment as a factor which contributed to a finding that her degenerative disc disease was not disabling.

The ALJ also considered Alic's history of conservative treatment in the record.  On May 6, 2010, Alic complained of back pain and received an epidural injection, which she tolerated well.  (Tr. 328)  Alic was referred to a spine surgeon for surgical consultation; however, the record is devoid of the results of any such consult.  (Tr. 327)  The record also contains numerous office visits by Alic from April 2012 to August 2014.  (Tr. 1082-1140)  Alic complained of back pain in each visit, often also complaining that the pain radiated to her buttock and thigh.  (Tr. 1082-84, 1094, 1097, 1139)  On September 3, 2013, the examiner reported good symptom control.  (Tr. 1097)  On December 3, 2013, the examining doctor reported good compliance with treatment, good tolerance of treatment, and good symptom control.  (Tr. 1094)  On August 5, 2014, the examining doctor reported good compliance with treatment, good tolerance of treatment, and poor symptom control.  (Tr. 1084)

Alic's history of seeking conservative treatment is consistent with the ALJ's finding that Alic has the RFC to perform the full range of light work.  The Eighth Circuit has considered a patient's history of obtaining conservative treatment when evaluating his or her subjective complaints of disabling pain or symptoms.  *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged"); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).  The evidence created after Dr. Tate's opinion shows that Alic

sought treatment for her back pain infrequently (approximately four visits in over two years), which is inconsistent with her allegations of disabling back pain.

The Court finds the ALJ considered Alic's subjective complaints on the basis of the entire record and set out numerous inconsistencies that distracted from her credibility. Because the ALJ's determination is supported by good reasons and substantial evidence in the record, the Court defers to his determination. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *Choate v. Barnhart*, 457 F.3d 865, 871 (8th Cir. 2006) (an ALJ may discount subjective complaints if there are inconsistencies in the record as a whole) (citations omitted).

The ALJ finally considered medical opinion evidence in forming Alic's RFC. The ALJ noted that none of Alic's treating physicians offered an opinion as to her disability or made any recommendations on her ability to engage in substantial gainful activity. (Tr. 830) The ALJ considered the opinion of Dr. David Volarich, D.O., who performed an independent medical examination on Alic on February 9, 2011. (Tr. 509-22) Dr. Volarich opined Alic would be unable to engage in any substantial gainful activity and could not be expected to "perform in an ongoing working capacity in the future." (Tr. 520) Alic was also advised to avoid all bending and to not handle any weight greater than 10-15 pounds. (Tr. 521) Dr. Volarich further opined that Alic "is permanently and totally disabled as a result of the work related injuries." (Tr. 520)

The ALJ afforded Dr. Volarich's opinion little weight because it was inconsistent and not supported by the objective medical evidence. (Tr. 830) As the ALJ noted, Dr. Volarich only examined Alic once. In the Eighth Circuit, an ALJ "may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Dr. Volarich's report was also inconsistent with the fact Alic was able to work for some time with her impairment.

Furthermore, Dr. Volarich's opinion was inconsistent with Dr. Tate's opinion, discussed below. Thus, the ALJ properly found that Dr. Volarich's opinion merited little weight.

**Dr. Tate**

Dr. Tate performed an independent medical examination on July 7, 2011. (Tr. 523-25) In that report, Dr. Tate stated that Alic reported worsening pain after she had been lifting mattresses on March 27, 2010, but that she had previously been examined for a work injury on December 24, 2008. (Tr. 523) Dr. Tate then listed the different medical records which Dr. Tate had at her review, including notes from Alic's primary care physician, CT scan reports, MRI reports, and medical and emergency room records from St. Anthony's. (Tr. 523-24)

Dr. Tate reported that Alic's range of motion is self-limited to 20% of normal but is inconsistent, as Alic could get on and off the examination table, which shows at least 50% range of motion. (Tr. 524) Dr. Tate did not identify any trigger points on examination of the lumbosacral spine. *Id.* In addition, Dr. Tate observed that Alic's range of motion could not be fully evaluated because she has co-contraction[2] and significant complaints of pain, which Dr. Tate noted is inconsistent with other aspects of her examination. *Id.* Dr. Tate also found that the "Waddell symptom magnification indicators are positive for increased pain with en bloc rotation, increased pain with axial loading, diffuse tenderness, distraction maneuvers or pain out of proportion to objective findings." *Id.*

A CT scan of Alic's lumbar spine revealed "moderate stenosis L4-5 due to a combination of degenerative [disc] changes and facet hypertrophy and hypertrophy of the ligamentum flavum." (Tr. 525) Dr. Tate further found: "[t]he patient has continued complaints of pain which is getting progressively worse with significant inconsistencies on physical exam and

---

[2] The National Institutes of Health describes co-contraction as the simultaneous contraction of agonist and antagonist muscles. <https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3045052/> (last visited Sept. 29, 2016)

symptom magnification." *Id.* Dr. Tate opined that the prevailing cause of Alic's low back pain was not related to the March 27, 2010 incident, but rather due to "pre-existing degenerative disc and joint changes and at most . . . may have caused a temporary precipitation of symptoms. She would have a 0 percent permanent partial disability of the lumbar spine." *Id.* As a result, Dr. Tate recommended that Alic work with restrictions of no lifting greater than 20 pounds with no repetitive bending at the waist. *Id.*

Alic contends the ALJ did not adequately explain his reasons for giving little weight to Dr. Tate's opinion. (Tr. 12) More specifically, Alic argues the ALJ did not explain "what 'evidence created' after July 2011" served as the reason for the ALJ to discount Dr. Tate's opinion. (Tr. 13)

In considering and discounting Dr. Tate's opinion, the ALJ explained that his RFC finding is more limiting than what Dr. Tate suggested because she did not have the benefit of reviewing medical records of Alic's subsequent treatments for her back, which occurred from approximately April 2012 to August 2014. As discussed above, during that time, Alic sought treatment for her condition infrequently, and she received conservative treatment for her pain. There is no record of her undergoing more aggressive treatment. The Court therefore finds that the ALJ's conclusion that Alic can perform the full range of light work is consistent with Dr. Tate's opinion that Alic perform no repetitive bending at the waist. Defendant's regulations provide that "the lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping." SSR 83-10. Furthermore, "occasional" is defined as "very little up to one-third of the time." *Id.* Dr. Tate's opinion restricted Alic to "no repetitive bending at the waist." (Tr. 525) However, Dr. Tate did not suggest that Alic should completely avoid bending at the waist.

15

After careful consideration of the record and Dr. Tate's opinion, the Court finds the ALJ's RFC, as it relates to Alic's ability to perform light work, is not inconsistent with the limitations that Dr. Tate suggested and is supported by the objective medical evidence in the record.

**English as a Vocational Factor**

Alic argues the ALJ failed to consider whether she can perform her past relevant work due to her Bosnian eighth grade education and inability to communicate in English. (Doc. No. 12, at 10) Alic also argues the ALJ incorrectly questioned the vocational expert because his hypothetical involved an individual who could communicate in English. *Id.* However, in seeking Social Security disability benefits, Alic completed a Disability Report – Adult in which she stated she could speak and understand English. (Tr. 126) Although Alic contends that there is no evidence she completed the Disability Report, her answer on the report is consistent with her work history, which shows she had been working in the United States for approximately seven years prior to her alleged onset date of disability. (Tr. 142) Alic's lengthy work history in the U.S. suggests she was at least somewhat able to communicate in English.

Under the Commissioner's regulations, since the ability to speak, read, and understand English is generally learned or increased at school, it is considered an educational factor. 20 C.F.R. § 416.964(b)(5); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (referring to the claimant's age, education, and relevant work experience as a vocational factor and not a medical factor). The ability to communicate in English is thus a vocational factor the ALJ considers at step five, not step four. It is well settled law that the five-step inquiry ends once the ALJ determines at step four that the claimant can return to her past relevant work. *Goff*, 421 F.3d at 790 ("If a claimant fails to meet the criteria at any step in the evaluation of disability, the

process ends and the claimant is determined to be not disabled."). If the claimant can still perform past relevant work, she will be found not disabled. In this case, the inquiry ended once the ALJ found that Alic could perform her past relevant work and was not disabled. The inquiry does not continue simply because the ALJ continued to posit alternate jobs that Alic could do. The Court rejects Alic's arguments on this issue.

Alic argues the ALJ failed to follow the law of the case since he failed to treat Alic's inability to communicate in English as a vocational issue. Alic's argument is inapposite. The law of the case doctrine "generally prevents relitigation of an issue previously resolved, and requires courts to adhere to decisions rendered in earlier proceedings. This doctrine applies to administrative agencies on remand." *Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010) The law of the case doctrine does not apply when the agency makes no finding of fact. As the Commissioner's brief notes, the ALJ made no finding of fact on Alic's ability to communicate in English. (Doc. No. 17, at 6; Tr. 6-21) As discussed above, the Court finds that the five-step inquiry ended once the ALJ found Alic capable of performing her past relevant work.

### *Chenery* Doctrine

Alic argues in her reply that Defendant's brief presents new rationale and findings in violation of the *Chenery* doctrine.[3] (Doc. No. 18, at 1) The *Chenery* doctrine stands for the proposition that "a reviewing court may not uphold an agency decision based on reasons not articulated by the agency itself in its decision." *HealthEast Bethesda Lutheran Hosp. and Rehabilitation Ctr. v. Shalala*, 164 F.3d 415, 418 (8th Cir. 1998) (quoting *Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990)).

The *Chenery* doctrine is unavailing in this case. Defendant's brief does not require the Court to consider new findings that were not present in the ALJ's decision. Instead, Defendant's

---

[3] The *Chenery* doctrine originated in *SEC v. Chenery*, 318 U.S. 80 (1943).

argument requires the Court's interpretation of the ALJ's decision and the regulation relating to light work. The *Chenery* doctrine requires a court to uphold an agency decision based on reasons articulated by the agency; it does not restrict the parties from litigating the case. This Court's limited role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Pate–Fires*, 564 F.3d at 942. Moreover, the Court finds that the ALJ's decision as written is supported by substantial evidence on the record.

### VI. Conclusion

In sum, the ALJ properly considered the objective medical evidence, medical opinion evidence, Alic's non-compliance during physical therapy, her ability to work with an impairment, and her treatment history in reaching his conclusion. For these reasons, the Court finds there is substantial evidence in the record as a whole to support the denial of benefits and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**. A separate Judgment will accompany this Order.

Dated this 30th day of September, 2016.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE